My name is Walter Shetley. I represent the plaintiff appellants in this case, three of five of whom are present in court. 23 years ago, this court decided that Native Hawaiians have the right to sue in federal court to enforce the provisions of Section 5F of the Hawaii Mission Act, which creates a trust in favor of the benefit for the purpose in part for the betterment of the conditions for Native Hawaiians, as defined in the Hawaiian Homes Commission Act. And we have numerous cases that have been decided since then that have held up that holding. The state has almost every single one of those cases challenged that holding. And almost in every single case when they've challenged it, the court has affirmed, reaffirmed that decision. And here we are today, 23 years later, with a case which is practically clearly admitted that they are violating the Section 5F trust. Where is that? I don't see that. This just hasn't been adjudicated. Excuse me? It hasn't been adjudicated. I don't see anybody admitting any. Well, they admit they've been using 5F money for the betterment of the condition of Hawaiians. And that, I submit, is a violation, a clear violation under the holdings and rulings of this court. Mr. Shutley, my concern with your analysis is that you seem to be melding the two acts, the Admissions Act and the Hawaiian Homes Commission Act, in order to sort of cobble together a theory of breach of judiciary obligations. I would like to focus first on Section 504F. And I would ask you to explain to me, in 504F, what is the breach of the duty that you're alleging the state in its role as trustee has committed? Section 504? Yeah. 5F. Oh, 5F. I'm sorry. Right. 5F states, the lands granted to the state of Hawaii by subsection B of this section, dot, dot, dot, shall be held by the state as a public trust, dot, dot, dot, for the purpose, for the betterment of the conditions of Native Hawaiians as defined in Hawaiian Homes Commission Act 1920. And for four other purposes. And for other purposes. That's what's causing me the problem, is that there are other purposes, including purposes that benefit more than just Native Hawaiians. Correct. If you look back to Section B, what's granted under Section B, the United States grants to the state of Hawaii, dot, dot, dot, Title II, dot, dot, dot, all lands defined as available lands by Section 203 of the Hawaiian Homes Commission Act 1920 as amended. So 5F includes the Hawaiian homelands. Okay. That's the available land. And does the state allege that the money that has been earned on those lands have gone into, I'll call it, a separate pot? They do not. Okay. They do not. So your theory is that they We have litigated this on numerous occasions. And this Court has said they have discretion not to, they don't have to segregate. They have discretion to co-mingle. So we've litigated this already before. And the Court says this is a discretionary function. If that's the case. What is not a discretionary function is to use the trust proceeds for some other purpose than one of these five purposes. That is what we are alleging. It's also true that under general trust law, well, first of all, we're not discussing the merits. Should we be discussing the merits? In other words, let's assume that we, your basic submission is that the District Court was wrong in thinking that Gonzaga v. Doe changed the law sufficiently that a three-judge panel of this Court could reverse the prior decisions. I'm sorry, Judge Berzahn. I really would like, I don't have an answer yet to the question that I asked. I really do want to know what your theory is. Okay. Because, and here's my problem. If there are five permissible uses for that money, one of which is for the betterment only of Native Hawaiians, then where is the breach of the trust if the money is used, for example, for the benefit of education in the state, which benefits both Native Hawaiians and other residents of the state of Hawaii? One of the permitted purposes is for the public's, for the support of the public schools. That is one of the permitted purposes. And theoretically, that could include beneficiaries besides Native Hawaiians, could it not? That should include everyone. Right. That's public, public means everyone. Right. OHA is not, does not deal with the public. OHA deals with a segment of the public, which is defined as Hawaiians and Native Hawaiians only. So, when they are using money for education of Hawaiians, that is not the support of public schools. That is, that is a support of Hawaiians who are not Native Hawaiians. But, and this is where I'm having problems with your theory here, because if it's, if the Admissions Act says there are five major categories of permissible uses, and the money is basically all co-mingled, so that when the money is being spent on one of the five permissible uses, it may or may not benefit solely Native Hawaiians. Where do I look to find a breach of the fiduciary duty of the trustee in federal law? If the state, if other officers of the state were spending this money for one of the other purposes, that is for public schools, that would be fine. But, of this income from the 5F lands, that is not, and not including income from Hawaiian homelands, but the income from the rest of it, a portion of that income is given to OHA. And, the only two purposes for the existence of OHA are the betterment of the condition of Hawaiians and the betterment of the condition of Native Hawaiians. So, the only legal purpose for which OHA can use this money is for the betterment of the condition of Native Hawaiians. And, don't you have to look to state law in order to find the standards that apply to the OHA trustees? No, you have to look to federal, Price v. Sakaka I and Price v. Sakaka II said, they, this is a federal trust, when the state gives money to OHA that does not satisfy the use purpose, it's still subject to the restrictions in 5F, and the only one of those possible uses that OHA can use the money for is the betterment of the condition of Native Hawaiians. But, that last is a state law issue. Is that? The last is a state law restriction. In other words, in terms of the federal restriction. Correct. So, there is a problem here, perhaps ultimately with regard to the merits, because the federal trust isn't concerned with who in Hawaii spends money on what, right? It's only concerned with ultimately that the money not be spent on one of the five purposes. But, OHA has not spent money for public schools. OHA can't spend money for public schools. Well, can't is a state law problem. Didn't is a different question. Excuse me? Whether it can or can't is a state law issue, not a federal issue. Yes, it is. They haven't, but they haven't done that. They haven't spent, they're not saying, well, we're spending money on public schools. They haven't said we're spending money on public improvements. They haven't said we're spending money on farm and home ownership on a widespread basis. They said we're spending money for Native Hawaiians. Let me ask a question. If we have to look to state law in order to define the fiduciary duty here, then for breach of which you claim you're entitled to damages under Section 1983, now we're ready, I think, to move to Judge Berzin's question, which under Gonzaga is one of jurisdiction. We don't have to look at state law for a breach, because the breach can only be under federal law. Is Gonzaga, is it one of jurisdiction? I do not understand the 1983 question to be one of jurisdiction. It's a question of stating the cause of action. It's not one of jurisdiction. Gonzaga, the question of whether you have a cause of action under 1983 is not a jurisdictional question. I don't see that Gonzaga changed anything in Penhurst or the Clamor's cases that were decided before Keokaha, too. So they say there's been a sea change with the Gonzaga case and the Blessing case. I don't see any change of the law at all. And this case is a trust case. This is not a spending case. All of these cases, Gonzaga, Blessing, Souter v. Artis M., Wilder, Virginia, Wright v. Roanoke, Penhurst, Maine, they're all spending cases. And this is not a spending case. This is a case where land has been given in 1959 to the state of Hawaii for the purpose, in trust, for the Native people, in part, for Native people. And when you say, well, it could be used for one or more of the five purposes, and they could use it all for one other of the purposes, that's not true. Because 5F includes the Hawaiian homelands. But whether it can or not is the merits of the case, right? Yes. Which have not been decided. And this is what I wanted to ask you to begin with. The merits of the case have not been decided. Whether you're right about the fact that there's a federal cause of action if they don't use the money for Native Hawaiians, or whether that's a state cause of action and therefore you lose, or whether you have to, in fact, in order to sustain a federal cause of action, prove that it wasn't used for any of the five purposes and not just for the Native Hawaiian. It's someplace that nobody in this case has gone yet, I mean, judicially, because the case was thrown out on the ground that you don't have a cause of action for anything. In this case, the court did not address the merits. Exactly. This court has addressed the merits in prior cases. This is what I wanted to ask you. Yes. Were we to decide that the district court was wrong in thinking that Gonzaga v. Doe was a sufficient change in the law for a three-judge panel with everything that's gone on before to change the law, which would really be our problem, as opposed to what we would have done at Benicio? Do we then reach the merits? Are you asking us to reach the merits? I am, yes. I'm asking you to. I'm asking you to. There was motions for summary judgment on both sides. All of the evidence was there, and if the court had ruled one way or the other, we would be in the same position. Of course, one of the things the district court might have done, had she thought there was a viable federal cause of action, would have been to address the state issues first, because you had separate state causes of action, which may have been simpler, because they don't have this problem that we've been discussing, and she could have decided the case on that ground, right? Yeah, but she dismissed those claims without prejudice. She dismissed them because she said there was no federal cause of action, but if she thought there was a federal cause of action, she might have exercised her discretion differently. So for us to go charging into the federal issues when we really can't reach the state issues, because we don't have the discretion to do that on our own, or do we? Do we have the discretion? I'm not asking you to decide the state issues. I'm asking you to decide the federal issues, which have already been decided in the Akaka cases, that once OHA gets 5F money, they can only use it for 5F purposes. Right. That's already been decided. Yes, but what is a 5F purpose, and how peripheral it has to be, and how much you defer to the trustees, and whether they might think that it benefits Native Hawaiians, even though it also benefits Hawaiians, and whether it has to be only Native Hawaiians. Those are all complicated questions. Yes. Many of which you could pretermit by going straight to the state law questions, couldn't you? Well, I suggested that when you're taking an expenditure that has collateral benefits to non-beneficiaries, that the court adopt the state standard. That's what I've asked the court to do. But doesn't that then run afoul of the Supreme Court directive that there has to be a breach of a right that is conferred by federal law in order to have a valid Section 1983 claim? Yes. This is a trust. This is what I was trying to get to before. Citing Blessing v. Freestone, and the concurring opinion of Justice Scalia, he says, As we explained in Pennhurst State School and Hospital v. Haldeman, 451 U.S. 1, 1981, such an agreement is, quote, in the nature of a contract, quote, the state promises to provide certain services to private individuals in exchange for which the federal government promises to give the state funds. In contract law, when such an arrangement is made, promises to pay, A, promises to pay B money in exchange for which B promises to provide services to C, the person who receives the benefit of the exchange of promises between the two others, C, is called a third-party beneficiary. Until relatively recent times, a third-party beneficiary was generally regarded as a stranger to the contract and could not sue upon it. I don't understand the relevance of this. There is some relevance, but this is a concurring opinion. And it laid out a theory that no one has ever adopted. But what may be pertinent, and I gather this is what you're saying, is that this line of cases, particularly culminating in Gonzaga, in its emphasis on the clarity of the right as opposed to there having to be a right. There certainly has to be a right under 1983, but the clarity with which it has to be stated seems to run out of spending clause nature of the cases. Is that what you're saying? I'm saying that there's a difference between contract law and trust law and contract law is something that Judge Scalia says is only recently developed that a third-party beneficiary can sue, but trust law is not such. Well, the best analogy for that is the Indian trust law cases, right? Yes. Where we have found enforceable federal rights created by treaty and we have basically found that the United States was in essence the trustee and if the trustee had not acted in a manner for the benefit of the Indian tribe, we would declare as a matter of trust law that there was a breach of that fiduciary duty. Yes. But let's go back to Blessings, but this time let's look at the opinion for the court by Justice O'Connor who tells us that only by manageably breaking down the complaint into specific allegations can the district court proceed to determine whether any specific claim asserts an individual federal right and the problem I'm having with your theory is that you don't get there without looking at state law and as I understand the Supreme Court, particularly on Gonzaga, they're telling us that we have to look to determine whether a federal right has been created. We've gone over this before. This is a federal trust created by federal law while the court said they would have no problem if need be to create a federal common law of trust but it's not necessary because everybody knows what the law of trust is. When Congress creates a trust, they know what they're doing. But you have to decide what the duty is that the trustee has breached. You have to clearly articulate the duty. The duty is to not spend any of that income or proceeds for purposes other than stated in 5F. All five of the purposes. But your federal theory does not you would prefer to say that it has to be what OHA has authority over under state law but you understand that you really can't do that for purposes of the federal trust theory, right? So it could be any of the five purposes. For present purposes. So we don't have to get to state law but you might lose. You may end up losing because maybe we will conclude that it does in fact even though it doesn't meet the Native Hawaiian purpose it meets one of the other four. And if you get it under state law you might win because you might be able to stick them with only the Native Hawaiian purpose. But under federal law you have to accede to all five. I don't even think they're claiming to be spending money under any of the other four purposes. They claim that they have the right to spend this 5F trust money for the betterment of the condition of Hawaiians and Native Hawaiians and they cite state law for the right to do that. Which if it did purport to authorize them to do that would be unconstitutional under the Supreme Court's laws. If you want to reserve any time you should do it now. Yes, thank you. Thank you very much. Good morning Your Honor William Weinhof on behalf of the state of Hawaii, Amicus Curris Deputy Attorney General. Thank you very much first of all for the opportunity to argue in front of you. How do we deal with the fact that ordinarily we don't decide issues only raised by Amicus Curris. Do you agree that it's not a jurisdictional question? It's jurisdictional in the sense that I don't think it's jurisdictional in the pleading sense, but it's jurisdictional in the sense that once the court decides that there isn't a claim under 1983 there's no further federal question and therefore no further federal jurisdiction. Correct, but it's not jurisdictional in any traditional sense. Well, I mean there's federal jurisdiction with respect to pleading. Right, so there is federal jurisdiction over this I mean this is of a character that if nobody had raised it we wouldn't have to decide it because it's essentially do they stand a cause of action under 1983? We have case law to that effect, I'm quite certain we do. Well, okay I mean of course I believe Alright, so assuming that for now But I would say of course that the court has to examine its own jurisdiction if there isn't a 1983 But if it's not jurisdictional then we don't So why do we reach a question that was raised originally only by Anamikos Curia? Probably because the district court relied on it but it's a peculiar situation Well, it's a peculiar situation because nobody else raised the issue the court went off on this maybe the court should have gone off on the merits and I'm sure that defendants would be more than happy if the court affirmed on the grounds that have been raised by Judge Talman and yourself I really didn't come to argue about that and I think that the judge made a correct decision and I think I believe, the state believes that it's a hugely important issue we've been in front of the 9th Circuit one time before and it was Well, after Gonzaga and after Gonzaga we came up one time before and that case was we briefed it and then it was dismissed on other grounds and we didn't get back up here so sooner or later we're going to have to get up here It seems to us that it was appropriate to be decided So what exactly do you think Gonzaga changed? What I think Gonzaga changed, well say for example Enough for us I mean you have to look at it from our position We have three judges here who are not supposed to go against circuit law and we have lots of circuit law, not just a little Well, I mean as far as lots of circuit law, first of all I don't think it really matters, I mean it's pretty clear that the Keokaha 1 and 2 say that there's 5 or 6 or 7 or 10 or whatever it is, other cases None of which examine it again except for Price 5 And they do track the general approach of the later case law in the sense that they recognize explicitly an identity of issue between what's a right under the private right of action and what's a right in 1983 and that's really what Gonzaga mostly decided and on that our case law is quite clear that that's exactly what we did, right? We took from the private right of action determination that there was a right into the 1983 that there was a right That's what Keokaha 1 did 1 and 2 and that's where 2 got the right from So what did it change? What it changed is I can read you in a few seconds what Keokaha 1 said It says We talked about the statutes as it was talking about 5F In that sense 5F says, in that sense the provision does not benefit any class narrower than all of the citizens of Hawaii It is clear however that the homelands were to continue to be used for the benefit of native Hawaiians as defined by the Commission Act Therefore the trust provision as applied to the homelands is intended especially to benefit native Hawaiians Since plaintiffs are clearly members of this group the first element of the court test is satisfied So those are the two sentences that carry the sting and what Gonzaga has done is made it very clear Gonzaga and Blessing have made it clear that simply being actually suitor frankly but those cases have made it very clear that simply being part of a class that is benefited is not sufficient and that's the change I would also I mean if we're talking about that issue well okay I won't There are two differences of course One of them is that and I thought this was what Mr. Schutte was saying but apparently not that whole line of cases are spending clause cases right I mean every one of them Pennhurst, Wilder Those are all spending cases and Gonzaga was a spending case but I mean those aren't the only cases that have ever done 1983 but the cases we're talking about are spending clauses And then there's Levatas and Golden State basically I think are the other two So and there's a lot of stress in the need for clarity because of the contractual nature of the spending clause In the spending law I would say Your Honor not in the 1983 cases. They are spending clause cases but Gonzaga for example talks about the fact that it's a spending clause case but it then doesn't go into the spending clause analysis of why of why spending clause cases there's only a certain amount of jurisdiction So you think that I wondered about that. You think that the whole Pennhurst line about the clarity needed essentially for waiver of sovereign immunity doesn't carry to 1983 That's right. I don't think there's anything in the case. I don't believe Your Honor that there's anything in the cases and more particularly in Gonzaga. I don't think there's anything that indicates that when you come to the court with something that isn't a spending clause case, which of course this isn't that there's some different analysis that applies as to whether you have a right and whether I don't think it would be different as to whether you have a right It would be different as to perhaps the clarity of the enunciation of the right. But I don't think there's any enunciation for that, Your Honor. We have all the other cases too. I mean Pennhurst, et cetera, et cetera 1983 cases, but it's very clear to us now that the that the Court v. Ashline in cases is also in there. Cannon, Sandoval, all those I guess I have to admit since it came up more in the argument than before. I had realized of course that these were spending law cases, but I don't believe off the top of my head that Cannon, Sandoval all those other ones are necessarily spending clause cases and I have not myself seen any I have not seen any case that indicates that if there was anywhere that if there was a case that isn't like this one, that isn't a spending clause case that there's somehow some different level of analysis that's applied other than Gonzaga. Gonzaga is a spending clause case, but it doesn't say because this is a spending clause case The second point is that this is stated to be a trust and there is a body of law behind that concept and that's really what the later cases in this circuit have relied upon. That's what Price v. Five says which is the last one to discuss it that's exactly correct The law of trust gives certain rights to individuals of enforcement What's weird about that is that you end up kind of amalgamating in some ways the private right of it seems to me that the private right of action theory is stronger perhaps than the 1983 theory or that the two coalesce here because what trust law gives you is a set of principles about who can file lawsuits and for what? I guess what I would say in response to that is I think there are two different concepts because what Gonzaga is telling us is that in order to have a private right of action in order to have a private right in order to have a private right under the statute you have to find that private right in the statute and that's where Price v the only case that actually looked at it on the merits after Price v was after Suda but before Blessing and Freestone that's where Price v we respectfully submit went wrong because they said okay well let's assume that That's your problem because once you say it went wrong we've got a problem which is if it's wrong it's wrong but we can't reverse it for being wrong It's wrong because Gonzaga tells us it's wrong Isn't it just as inconsistent with Suda if it's inconsistent with anything? No it's not necessarily it's inconsistent with I mean we argued it was inconsistent with Suda and that argument was rejected it's inconsistent with Blessing and it's absolutely wrong under Gonzaga because Gonzaga actually Blessing and Gonzaga I think I sort of amalgamated perhaps incorrectly because the words methodical inquiry come from Blessing and the words textual structure or whatever it is come from Gonzaga so Blessing and Gonzaga tell us that you need to find the right by a methodical inquiry into the textual structure of the statute and that's where Price went wrong because you can't say that when they use the word trust that's in the statute and it has a common law meaning and that's what it means? No I don't think that your honor you don't find a private right in an action simply because it's a trust because it says the word trust in the statute that's what I would submit the question was made earlier with respect to Indian law I don't think Indian law is a good analogy to this Why isn't it? Don't we still look to the trust document in my analogy the treaty in order to determine what the clearly defined right is that the treaty has granted to the beneficiary Indian tribe? You know Indian law is obviously a very complex area that the Ninth Circuit deals with more than any other circuit so I know I'm getting into areas that are way over my head but within your competency so you know I've in the past dealt with Mitchell 1, Mitchell 2 White Mountain stuff and what I see and I remember from those cases and we'll all have to research it because I'm deferring to you of course on this but what I remember of those cases is the court saying that there's a vast web of you know history and all kinds of statutes that have I don't think the word penumbra is used but you have kind of a penumbra or you know just emanations of things to mix another case in that give the court some comfort there and you don't have that here. But there's also case law under some case law under other admission acts that use the language of public trusting I know one in the Tenth Circuit and I'm sort of curious to know what else there is I don't know whether you've looked at that. You know I had this in another one I know one of the major ones is a case called Skamania from Washington and I'm also familiar with a district court case from the District of Colorado Skamania was a case well Skamania was a case in which there was it was a state law case and so the argument was that the state had abrogated a contract on ceded land or whatever they call it there and that was only for the benefit of the lumber company so that didn't stand up the Colorado case that I worked on I don't remember the site now but what it was is in Colorado you also have admission act cases you have ceded lands and so the issue there was they were selling the land they were selling it and they weren't selling it fast well okay I'm really getting out there I found for example a case would you supply citations to those two cases in letter form and perhaps others and I can tell you that I found a case called Branson School District vs. Romer which did a whole trust analysis do you have a site for that your honor 161 F3619 which did a whole trust analysis and never says what the basis of the cause of action is and you know what there are a lot of cases like that one of the cases a major Supreme Court case is the Papasan case which it's Papasan and I'll give you a site for that too it cites a lot of there actually are quite a few of them and I'll give you sites for the one I talked about Papasan vs. Almayne or something the point is none of those are 1983 cases and I actually have puzzles at least the ones I've read you can't tell what they are yeah that's right I agree with that let me follow up then forget about Indian law for a minute let's just assume a plain old breach of trust action where you have a private trust that's created by the testator if a beneficiary brings an action for breach of that trust you still have to look to the trust document in order to figure out what duty was owed by the trustee for which he now stands in fiduciary breach to the detriment of the beneficiary correct yes and the question I was trying to pursue with Mr. Shutley was whether or not we can look to Hawaii's state law which clearly sets forth a number of fiduciary duties by trustees of OHA and incorporate those into a theory of a breach of the federal trust when all we really have is the general creation of a public trust under section 5F which is clearly federal but doesn't go very far in telling us what the trustee's obligation is well thank you for giving me an opportunity to respond to that question too and I see I've already eaten very much into the defendant's time I know they'd like to respond what is your indulgence of the presiding judge I would like to hear your answer I think the answer is that regardless of whether or not I don't I personally don't think they have a cause of action under federal law and I definitely don't think they have a cause of action I don't think they have a federal right given by the admission act because when you have to go outside of the text and structure of the act itself you don't have a 1983 action that's my answer but do you think I guess this is what I that those are merits questions so we would first have to reverse the district court with regard to Gonzaga to even get to those questions that question is a merit question yes your honor which I don't think you would I mean if you go off on the same ground that the district court went on then of course you don't get to that I mean it would also be a possibility I'm sure the defendants are eager to argue that even if you somehow either take my question first or God forbid rule against me on that question that they should still win I'm sure they'd like to say that thank you very much if you want to do you want to stop I already took so much of their time your honor that I appreciate the opportunity to talk to you Robert Klein representing the defendant trustees the present trustees of the office of Hawaiian affairs I feel like I'm sort of on a standby basis here your honors because I think the dominant question is the one that Mr. Shotley addressed to you well then how come you didn't raise it we represent Hawaiian people who have benefited by the courts rulings before and we're in a very difficult position with respect to the argument that really seeks to undo the rights that were created over time by the 9th circuit very difficult position for the trustees to not have divided loyalties with respect to the beneficiaries should we then permit the state to intervene since you are in essence conflicted from raising the issues that the state wants to argue I think the state stands in a very different position from us my trustees were sued personally and asked to replenish the trust out of their own pockets under 1983 the state has a broader interest and their interest which was recognized by the district court was an interest that we the state have an interest in the admissions act and the laws that flow from them that ultimately result in OHA managing this trust trust corpus and we really want to know whether or not this admissions act creates a right they have a very discreet issue it's broader than ours so I guess what I'm really asking are they an indispensable party to this litigation should we not be relegating them to the status of an amicus but instead suggest to the district court that it ought to seriously consider allowing them to intervene as a right candidly I don't think that intervention as a right is a correct analysis I think the way they did it is correct they came in as an amicus with a separate issue that sort of dominates state lawsuits in our state whether or not rights are created we have no obligation as an appellate court to even consider an argument except to the extent that the district judge relied on it and the district judge relied on it and so that is the crux of the reason we're here today is because Mr. Shotley disagrees with the fact that the Supreme Court has essentially sub saliencio overruled the precedent of the Ninth Circuit but you're telling us that you're the right party to defend it is what I hear you saying I'm saying that the position we have consistently taken is we have taken no position on this issue and I understand why but it seems to me you've got a conflict not in an ethical sense but in the sense of not being able to fully and vigorously advocate an issue that is obviously central and that's where the state comes in the state can fully and vigorously argue that and they have other reasons for doing it besides this case and it is a dominant issue in the case because we didn't get an opportunity to argue our motions for summary judgment that were pending before the court which we think are clearly meritorious particularly on the issue of qualified immunity What about my question about whether if we were to reverse I'm not saying at all that we would but if we were to on the Gonzaga vs. Stoke if we were to reach it and reverse it do we then reach the merits? Should we reach the merits or should we just remand at that point? Your Honor, I think it should be remanded we haven't had the benefit of the district judge's viewpoint on this whatsoever Plus there wouldn't be a possibility of the assertion of jurisdiction over the state law questions Absolutely, Your Honor which we really couldn't do Yes, I think the district court should have the benefit of our arguments fully briefed and be able to take a look at what are federal questions and try to extricate them from the state law questions which I think are basically trust questions under the statute of the common law as Mr. Shotley alleged in House Bill 3 Your arguments in the merits very superficially they are that a great deal of deference is due to the trustees if it had to pursue the trust purposes and that the expenditures don't have to solely benefit Native Hawaiians as long as they benefit them in some way Is that the short version? That's the short version and it's the version that guided this court in the last price case where in the price case we had a single definition referendum and this court said it's fine to spend ceded land revenues for a single definition even though it doesn't benefit directly solely Native Hawaiians but benefits the broader Hawaiian community One last question, are you in fact arguing on the merits that any of these expenditures, the five expenditures there are five specific expenditures or specific categories of expenditures are you arguing that any of those meet one of the other 5F categories than Native Hawaiians? In other words, are you defending the expenditures on any ground other than the impact on Native Hawaiians? No. So in essence Judge Talman's understandable concerns are sort of not the problem because that's not your argument. Your argument is that it's one of the other five purposes Candidly that's not our argument Candidly that's not our argument It's that it sufficiently benefits Native Hawaiians Right, I mean if you look at the programs or the expenditures that Mr. Shotley is talking about trustees using their discretion to spend ceded lands money to support a bill going through Congress and the speculation that he draws from that, that's probably not within any purpose other than to benefit the broader Hawaiian community and the state as a whole So I think broadly it fits within the purposes of at least one of the five trust purposes. He talks about Napua Noe Ao which is a school that teaches Hawaiian language to Hawaiian children That's an educational purpose But wait a minute, I thought you just said that isn't what you're relying on. You're still relying on the fact that each of these actually benefit Native Hawaiians sufficiently I'm relying on the Hawaiian community benefit from the expenditure of ceded land trust funds and that should be sufficient So the two observations you just made I presume the reason you're not making these arguments is that it's because it would go beyond your agency's role as a matter of state law so you're not relying on it Exactly. Under state law Is there anything else you want to tell us very briefly? I hesitate to do that, Your Honor I think you have it That's fine. Thank you very much for your argument I'm sorry Who are you representing? I'm sorry, who are you representing? I represent the former trustees He and Ota They're out of the case Everybody agrees they're out of the case We're out of time Everybody agrees they're out of the case Thank you Nice argument though Your Honor You agree they're out of the case I submit you hit the nail right on the head when you said that the analysis that the court engaged in in Keokaha II was exactly this correct analysis that the court says should be used in Gonzaga They took the they took the implied right analysis of a right and they said that exists and 1983 supplies the remedy so that's exactly correct The argument as I understand it is that that's one thing that Gonzaga did but the other thing that Gonzaga did was to make clear that you can't look at people as members of a class for purposes of whether or not there's a right There has to be a right running to individuals and the question is whether our case law sufficiently partakes of that and if it does it seems to me it's really in the later cases where it starts talking about trust law and the rights of beneficiaries of trusts Yes I think that's all I think it's all correct The only thing that I would submit that is not correct there's a lot of things in all those cases that I disagree with because we lost every single one of them when trying to get certiorari There's lots of things in there I disagree with but on this point I agree with everything The only part that I don't agree with is Keokaha I Yes there should be an implied right right off the bat so we don't even need to get into 1983 but anyway That's not the law of this circuit so I would also like to mention that under statehood admission acts seated land trusts Hawaii is unique in that none of the other states provide for taking care of the native people in 49 other states Conceptually it's not unique because if this was a trust it's a public trust and it seems to run to everybody This is a dual trust I would submit it's different from all of the other admission acts In 1959 the Indian law was that congress wanted to get rid of the BIA and they didn't want to deal with native people anymore at that time so they just say okay we've got obligations to native people we want to turn it all over to the state The state got all of the land, the public land in the state of Hawaii except what the federal government was specifically using for national parks, military bases and other federal installations This is not the case in any other state. The other states only get a certain number of sections per township of public land and then they are supposed to use it for schools and education and public purposes but in Hawaii there's an additional trust requirement that it be used to better the condition of the native people and this is where the Indian law comes in because and it's only in Hawaii where the state has got the obligation of the trust obligation for the native people and so to say that after 25 years of litigation the state has no duty to the native people enforceable right is just Well it may have a duty and it may have a right but the right is enforceable perhaps by only the Attorney General of the United States and perhaps in certain circumstances by beneficiaries depending upon what the articulated duty is that has been breached to those beneficiaries Well we've tried to get the United States to perform their duty to enforce the trust and this court has said they don't have any duty to enforce it says may therefore and it's totally within their discretion whether they want to or not and President Reagan has said he thought the whole Hawaiian Homes program was unconstitutional and he didn't want to have anything to do with it and so we have all of that I think you should wind up The final thing I do not want to look at the state law here. I'm talking about federal law, violation of federal law I'm talking about use of 5F proceeds for a purpose that is not set forth in section 5F that is specifically for the betterment of the condition of Hawaiians and some of this trust money, it's admitted that some of this trust money was given to Hawaiians for their education that is not Native Hawaiians, but Hawaiians Thank you very much and thank all of you for a very useful and interesting argument
judges: Thompson, Berzon, Tallman